**SO ORDERED.**

**SIGNED October 23, 2007.**



_____
HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

IN RE:  CASE NO. 07-80559
    ROY FELLS, JR.
    RENETTA BRITTON FELLS

**REASONS FOR DECISION**

This matter comes before the court on Green Tree Servincing, L.L.C.'s ("Green Tree") objection to confirmation of the Chapter 13 Plan filed by these Debtors. This is a core proceeding pursuant to 28 U.S.C. 157(A) and (L). Jurisdiction is proper per 28 U.S.C. §1334 and by reference from the District Court pursuant to Local District Court Rule 83.4.1, incorporated into Local Bankruptcy Rule 9029.3. No party has moved to withdraw the reference and the district court has not done so on its own motion. This Court makes the following findings of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. Pursuant to these reasons, the objection is sustained.

**Findings of Facts and Conclusions of Law**

Debtors filed a case under Chapter 13 on June 14, 2007. Green Tree holds a lien secured by

debtors' mobile home, which sits on property listed as "3729 Church Street," and described as "Hier Property" [sic]. (Schedule A.) Although Green Tree filed a claim for its full contract amount owed, $34,463.57, repayable over the life of the plan at 9.75% interest, the Chapter 13 plan proposed to cramdown the secured value of its lien to $12,500.00, with payments to Green Tree of $264.06 per month. The plan also lists Green Tree as the holder of an under-secured claim in the amount of $15,600.00, which is to be paid a zero percent dividend as an unsecured creditor. On Schedule B, debtors list a 1996 Buckaneer [sic] Mobile Home with a value of $12,500.00. Both properties are listed on Schedule C as exempt, but no values are attached to the exemption and no value is assigned to the real estate.

Green Tree objects to the value assigned to the mobile home and repayment terms, asserting that the mobile home constitutes the principal residence of the debtors. Therefore, it insists it is entitled to payment of the claim in full in the amount of $34,463.57 at 9.75% interest over the life of the term of the plan, citing 11 U.S.C. §101(13A); §1322(b)(2), and *In re Shepherd*, 354 B.R. 505 (Bankr.E.D.Tenn. 11/30/2006).

The sole issue under advisement is whether the debtors' mobile home is construed as a "principal residence" for purposes of the anti-modification clause of 11 U.S.C. §1322(b)(2). This issue has divided the bankruptcy courts. Courts finding in favor of lenders on the anti-modification issue have focused on the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act's ("BAPCPA") revision of the term "principal residence" in §101(13A) to include a mobile or manufactured home, without regard to whether the mobile home is attached to real property. Prior to BAPCPA, as *Shepherd* notes, application of the anti-modification provisions required the claim be secured by *real* property and no other collateral. Put another way, if the mortgage obligation did

not include the real property on which the principal residence was located, or the mortgage obligation included anything other than the real property, the claim could be modified and was subject to cramdown. *Shepherd,* 354 B.R. at 510.

In the case of *In re Lungar*, 370 B.R. 649 (Bankr.M.D.Pa. 6/29/2007), the mortgage attached to the debtors' principal residence, but the lender also held a lien on an escrow account. There, the Court found that its pre-BAPCPA determination that an escrow account was the separate property of the debtor was no longer applicable. Observing that property interests are usually defined by state laws, but where there is a conflict between state laws and bankruptcy law, the state law may be suspended, (citing *Butner v. United States*, 440 U.S. 48 (1979)), the Court held that "since Congress chose to define all 'incidental property' as included in the 'debtor's personal residence' and all residences as being included in the term 'real property,' Congress has effectively broadened the definition of real property for the purposes of implementing §1322(b)(2)." *Lungar*, 370 B.R. at 361.

At least one court followed *Shepherd* where the lien was secured by a mobile home and debtor-owned real estate on which it was located, despite the fact that the title to the mobile home had not been surrendered to the county auditor as prescribed by state law for taxation purposes. *In re Davis,* --- B.R. ----, 2007 WL 2245924 (Bankr.S.D.Ohio 5/24/2007). The court limited its holding to the situation where debtor owned both the mobile home and the underlying land, but declined to address the situation where debtor did not own the underlying real estate, as in *Shepherd*. Even though the failure to surrender the mobile home title to the taxing authority prevented it from being taxed as real property, the court held that the anti-modification provision applied. *Id.* The court observed that prior to the enactment of BAPCPA, Ohio courts could use two tests to determine

3

whether a mobile home was covered by the anti-modification provision. The first test turned on whether or not the certificate of title had been turned over to the county auditor for taxation purposes.[1] The second test involved physical annexation of the mobile home, its use and the parties' intent. *In re Cluxton*, 327 B.R. 612 (B.A.P. 6th Cir. 2005)(*superseded by statute as stated in In re Davis,* --- B.R. ----, 2007 WL 2245924 (Bankr.S.D.Ohio 5/24/2007).

Another bankruptcy court focused on the manner in which the mobile home was affixed to the real estate, irrespective of the ownership *vel non* of the underlying real estate. *In re Coleman*, --- B.R. ----, 2007 WL 2376722 (Bankr.W.D.Mo.8/2/2007). There, the court noted that under Missouri law, a mobile home is considered to be personal property, but may be converted to real property if certain conditions are met. These factors include whether the manufactured home has been attached to a permanent foundation on real estate owned by the home owner and whether the apparatus enabling the manufactured home to be moved (including wheels, axles, and hitches) would render it impractical to reconvert the same to a manufactured home. Since the Coleman home was "sitting on bricks and . . . tied to the land with . . . 'standard tie downs'" and could be moved "by getting a person with a truck out there [to] untie it, hoist it up, put wheels on it, and drive it off" the home was still personal property, and the contract could be modified. *Coleman*, p.6.

Yet another result was reached by a court where the debtor sought to modify the mortgage held by Green Tree on a mobile home and an independent security interest held by another lender on the debtor's real estate. The real estate creditor argued that since the mobile home (debtor's

---

[1] The Louisiana Legislature has provided that mobile homes immobilized under the terms of the statute are exempt from sales tax under the Manufactured Home Property Act. (Op. Atty. Gen. No. 81-1280, January 15, 1982.)

4

principal residence) was located on the land secured by his lien, the anti-modification provision applied to its lien. The court rejected that argument, noting that the balloon payment was currently due and owing and thus could be modified, but sustained an objection to confirmation by Green Tree, finding that the mobile home constituted debtor's principal residence.[2] *In re Sturgill*, 337 B.R. 599 (Bankr.W.D.Ky. 2/14/2006).

A number of other bankruptcy courts have strongly disagreed with *Shepherd*. One court found the notion that amended §101(13A) rendered §1322(b)(2) "absurd," noting that the latter had been a part of the Bankruptcy Code since 1979. The court rejected the notion that Congress "forgot" to delete the word "real" from §1322(b)(2) "implausible." *In re Cox*, 2007 WL 1888186 (Bankr.S.D.Tex. 6/29/2007). That court observed that the limitation of §1322(b)(2) to real property alone has been "clear and has governed chapter 13 cases for 27 years." *See also In re McLain*, — B.R. — (Lexis 2916 (Bankr.S.C. 8/30/2007)).

Another court rejected Green Tree's anti-modification argument where the debtor did not own the real estate on which the mobile home was situated, since under Alabama law, the attachment requirements had not been met (e.g, the cancellation by the owner of the certificate of motor vehicle title). Importantly, that Court interpreted "real property" and "debtor's primary residence" as being dual requirements to the application of the anti-modification clause, which must both be satisfied. *In re Manning*, 2007 WL 2220454, p.18 (Bankr.N.D.Ala. 8/2/2007).

In a pre-BAPCPA case, a Louisiana bankruptcy court rejected the claim by Household Finance that it was protected by §1322(b)(2) when it held a both a mortgage on the debtors' real

---

[2]Since, however, the value of the mobile home had not been established, the court scheduled a valuation hearing, which is confusing, since the value of the mobile home should be irrelevant if the contract cannot be modified.

5

estate and manufactured home on that property. The debtors borrowed the funds to purchase immovable property from Household on July 25, 2000. The timely recorded mortgage contained a provision that debtors would occupy and use the real property as their principal residence within 60 days, and for at least one year after the date of occupancy, unless the lender agreed otherwise or there were extenuating circumstances. There was also an independent "occupancy agreement."

The debtors also purchased a 1996 mobile home on the same date of the real estate purchase. There were no independent documents establishing a lien in Household's favor on the mobile home, nor was the home immobilized pursuant to the Louisiana Manufactured Home Property Act, LA R.S. 9:1149.1 *et seq*. The court concluded that the exclusive method for a mobile home to become an immovable was by compliance with the immobilization statute and rejected Household's effort to reform the mortgage. *In re Ellis*, 324 B.R. 595 (Bankr.M.D.La. 5/10/2005).

Although no party has cited any legislative history for the change in BAPCPA in §101(13A), this Court finds illustrative of Congress' intent with respect to the treatment of mobile homes and creditors of same, its findings in the enactment of the Manufactured Home Construction and Safety Standards as 42 U.S.C. §5401:

> Congress finds that-
> (1) manufactured housing plays a vital role in meeting the housing needs of the Nation; and
> (2) manufactured homes provide a significant resource for affordable homeownership and rental housing accessible to all Americans.

Considering Congress' recognition of the practical reality of the use of mobile homes as primary residences, this Court also looks at how Louisiana law already treats mobile homes in the area of homestead exemptions. One federal court applying Louisiana Law has recognized that a mobile home located on land not owned by the debtor, occupied by him and his family as a dwelling,

6

and which could not be removed from the land without substantial work, was entitled to claim the mobile home as exempt under the Louisiana homestead exemption statute. *Matter of Hanks*, 11 B.R. 706 (W.D.La.1977). There, the court noted that the "essential and primary purpose of the homestead exemption is to protect the home so that the debtor 'will not become a charge upon the state,'" *citing St. Mary's Bank & Trust Co. v. Daigle*, 128 La. 758, 55 So. 345 (1911).

Although this exemption is not enunciated in the statutes or the Constitution, Louisiana courts, including the bankruptcy courts, have recognized it as the law. *In re Baker*, 71 B.R. 312 (Bankr.W.D.La.1987). There, the court observed:

> "The trustee first argued that the mobile home is not exempt since the Debtor does not own the land on which it is located. At first blush it would appear that the homestead exemption requires the ownership of land and buildings located upon the land. However, that has not been the jurisprudence, which has apparently consistently interpreted the statute to mean that a building is exempt as a homestead (assuming it otherwise qualifies) regardless of whether the Debtor also owns the land on which the building is located."

*Id.*, at 315.

The court relied on *Hanks* in this decision, but noted that the debtor's testimony was that he had moved into the mobile home after the case was filed. Moreover, the debtor had never owned the land on which the mobile home was located. The trustee ultimately prevailed, since entitlement to an exemption is determined as of the date the case is filed, the debtor was not entitled to an exemption.

Should this Court apply the pre-BAPCPA holding in *Ellis* and the post-BAPCPA line of cases holding that something more must occur for a mobile home to be transmogrified from personal property to real property for the lender to benefit from the protection of §1322(b)(2)? This result follows well-established pre-BAPCPA case law and avoids attempting to reconcile the less than

7

artful drafting by Congress in adding definitions while not amending a closely related statute. However, adopting a bright line requirement of immobilization effectively ignores what is essentially a judicially crafted homestead exemption for mobile homeowners in Louisiana, irrespective of the ownership of the land on which the mobile home is located.

Most recently, the Bankruptcy Court for the Western District of Virginia held in favor of Green Tree on this issue, where the debtors owned the mobile home, but rented the lot on which it was placed, despite the fact that state law defined and taxed mobile homes as personal, not real, property. *In re Ennis*, Case No. 07-60738 (W.D.Va. 9/28/07). That court reasoned that because the mobile home loan was financed by a mortgage lender, who is the type of creditor intended to be protected by §1322(b)(2), that the state law categorizing the mobile home as personal property was superceded by a "countervailing federal interest" requiring "a contrary result." *Id.*, at p. 3, citing *American Bankers Ins. Co. Of Florida v. Maness*, 101 F.3d 358, 363 (4th Cir. 1996) and *Butner v. U.S.*, 440 U.S. 48,55, 99 S.Ct. 914, 918 (1979).

Here, Louisiana law would not be totally superceded by such a finding, as it is beyond peradventure that ownership of a home is to be protected, for example, looking to the extension of the homestead exemption to mobile homes. Historically, the homestead exemption, "in a close tie with L.S.U. football," "has long-been the sacred cow of Louisiana." *Jones v. Williams*, 902 So.2d 1154, 1156 (La.App. 2 Cir. 5/11/05), and exemptions are interpreted liberally in favor of debtors. Limiting exemptions on homes to those who can afford a traditional house and land discriminates against those who elect or can afford only manufactured housing. By extension, it is counter-intuitive to permit a Louisiana debtor to claim a mobile home located on unowned land as exempt (since it is the home and protected under the exemption laws), and yet permit the debtor to

8

cramdown a lien on that same property. Permitting cramdown on those facts discriminates against the lenders who make such ownership possible, and results in disparately treating similarly situated creditors. This result is not only at odds with well-settled state law, cited above, but could lead to absurd results by permitting some mobile home owners to cramdown the lien simply because they rent a mobile home lot, while protecting the lender when the real estate is owned by the debtor.[3]

## Conclusion

Considering the combination of the revision of 11 U.S.C. §101(13A), the reasoning of *In re Shepherd* line of cases, Congress' recognition of the practical reality of mobile home use, and Louisiana exemption law, this court concludes that a lien on a mobile home that constitutes the debtor's principal residence as defined in 11 U.S.C. §101(13A) is not subject to modification under 11 U.S.C. §1322(b)(2). The Objection by Green Tree to confirmation is sustained. Debtors shall be allowed to amend the plan accordingly. A separate and conforming order will be entered.

# # #

---

[3] The Louisiana homestead exemption does not extend to property occupied by a debtor but owned in indivision by him or her and other relatives. *Gulfco Finance Co. of Natchitoches v. Browder*, 482 So.2d 1019 ( La App. 3d Cir. 1986). Thus, if the Fells' mobile home had in fact been immobilized, their entitlement to a homestead exemption under well-settled case law would have been very much in doubt, as it would conflict with the statute. Debtors listed the real estate at 3729 Church Street as exempt, but noted it was inherited property. They listed the mobile home as exempt under La. R.S. 13:3881(A)(7), which is applicable to one motor vehicle per household, not mobile homes. These debtors' entitlement to an exemption is not at issue, for no objection has been filed. However, if their mobile home had in fact been immobilized, the ownership of the real estate would become a factor in their entitlement to an exemption. The reality is that, as most mortgages require, debtors here have waived their homestead exemption in favor of the lender. (*See* Claims register, Claim no. 1, Security Agreement, p. 3.)